SIMONSON v. PATTERSON.

Opinion delivered June 2, 1919.

COMPROMISE AND SETTLEMENT—EFFECT—RENTAL CONTRACTS.—Where a sublease provides that in event of a sale the sublease should terminate, and plaintiff lessee purchased the premises, *held* that where plaintiff insisted that the contract was terminated and defendant entered into a new contract with plaintiff at increased rental, such contract was a compromise and settlement, and binding, though defendant executed it under protest.

Appeal from Mississippi Circuit Court, Osceola District; *R. H. Dudley,* Judge; reversed.

*J. T. Coston,* for appellant.

1. The provision in the old contract for a termination thereof in case of sale was valid and binding on Patterson, even though he did not know before signing it that Simonson was not the owner of the land.

2. The provision for terminating the old contract in case of a sale was binding, but if not it became binding when Patterson discovered that Simonson was not the owner and elected to go ahead and carry out the contract without complaint or taking any steps to cancel or rescind it.

3. The court erred in its instructions.

4. The evidence of Patterson was not competent, as it tended to vary the new contract.

5. Patterson in the new contract got 20 acres more land in section 31 than he got under the old contract, and was given his choice of moving or signing a new contract.

6. Patterson's attention was called to the provision for the termination of the old contract in case of a sale and was given his choice of moving or signing a new contract, and, after consulting an able attorney, he told Simonson there was some doubt about it but he was going to sign the new contract, and did. That was a compromise of their dispute and a sufficient consideration. 74 Ark. 270; 105 *Id.* 638.

7. The provision in the old contract for its termination in the case of sale was valid and binding.    Tiffany on Landl. & Ten., p. 140.

8. Patterson is estopped by his acts. 93 U. S. 62.

9. Incompetent evidence of Patterson was admitted as to what he told Simonson, conflicting with and varying the terms of the written contract. 206 S. W. 895.

10. The compromise was a sufficient consideration. 43 Ark. 177. A protest was of no avail. 49 *Id.* 73-74; 85 S. W. 410. As to the compromise being a consideration, see 152 S. W. 299; 144 *Id.* 928; 138 *Id.* 983.

11. There was also a new consideration, the additional 20 acres of land given under the new contract. 1 Elliott on Contracts, § 209; 33 Ark. 101; 138 S. W. 457.

12. In conclusion the instructions do not touch the law applicable to this case. The case on the evidence should not have gone to the jury, but a verdict should have been instructed for appellant.

*W. J. Driver,* for appellee.

While the provision in the old contract for a termination of the lease in case of a sale may be valid and binding legally, yet the lessor has estopped himself by purchasing after inducing Patterson, the lessee, to enter into same in reliance upon his ownership. 16 Cyc. 719; 12 Ark. 42; 35 *Id.* 376.

Where an agent makes a contract without disclosing his principal he becomes liable personally himself. Mechem on Agency 695-6; 87 Ark. 434. The doctrine of equitable estoppel applies here. Pom. Eq. Jur., § 804. See also 99 Ark. 260; 64 *Id.* 627; 16 Cyc. 686-692; 55 Ark. 299.

Patterson could not dispute the title of Simonson. 22 Wall. 572; 6 Peters 382; 18 Howard 68; 70 Am. Dec. 115. See also 21 *Id.* 107; 100 *Id.* 538; 11 Howard 322; 20 *Id.* 760; 16 Cyc. 719; Bigelow on Estoppel (5 ed.) 450; 56 Mo. App. 183. When Simonson entered into this lease without disclosing the limit of his title he became responsible for the performance of the contract and

was required to exercise the same good faith in dealing with Patterson as if he was the owner. Patterson relied on his representations, expended money in draining and improving the lands, and was entitled to retain the property for the term contracted for without forfeiture. 93 U. S. 62.

The cases cited by appellant do not apply here. 112 Ark. 226. See also 34 *Id.* 44; 1 Brandt on Sur. & Guar., § 387; 1 Page on Contracts, § 312; 54 Ark 185; 55 *Id.* 374; 30 Ark. 50; 9 Cyc. 316-349; 127 Mo. 327; 117 Fed. 99. See also 102 Ark. 592; 39 Miss. 442; 31 Tex. 42; 41 Vt. 311; 234 Penn. 330; 94 Ark. 390; 72 *Id.* 539.

The statute of limitations was not pleaded. New issues cannot be raised here for the first time. 72 Ark. 539; 74 *Id.* 88; 71 *Id.* 242-552; 66 *Id.* 219; 64 *Id.* 305; 46 *Id.* 97; 80 *Id.* 391; 82 *Id.* 260; 101 *Id.* 95.

Appellant was estopped to declare a forfeiture because he failed to disclose to appellee the limitations upon his right to contract and received the execution of the contract of December 3, 1915, on the theory of ownership, and the second contract being without consideration there was no basis for the recovery of rents, and the case should be affirmed.

HUMPHREYS, J. This suit was instituted in the Oscelola District of the Mississippi Circuit Court by appellant against appellee, to recover a balance due for the year 1918 on a rental contract made between the parties on November 27, 1917, for a plantation of 400 acres in said county.

Appellee denied liability on the ground that the contract was void for want of consideration.

The cause was submitted to a jury on the pleadings, evidence and instructions of the court, upon which a verdict was returned and judgment entered in favor of appellee. From the judgment an appeal has been duly prosecuted to this court.

The parties first entered into a written contract of rental for the plantation on December 3, 1915, covering

the years 1916, for $5.50 per acre; 1917, for $6 per acre; and 1918, for $6 per acre if middling cotton was worth less than 10 cents per pound at Memphis on November 15, 1918, and $6.25 per acre if worth more than 10 cents per pound at said time and place. Appellant did not own the land at the time the contract was made. Appellant testified that he informed appellee, when the contract was made, that he held the lands under lease from non-resident owners. Appellee testified that he signed the contract believing that appellant was the owner of the plantation, and did not ascertain to the contrary until January, 1916, after he had taken possession and placed his tenants, teams and machinery on it. One provision of the contract was as follows:

"In event of sale of land herein described, this lease is to terminate and become null and void at the end of the year in which such sale shall have been made."

Appellant purchased the land on September 17, 1917, from the owners. On October 4th thereafter, he wrote appellee as follows:

"I beg to advise that I have finally and fully closed trade with the former owners of the property which you are now farming, and under the terms of your contract, same is void and terminates at the end of 1917. If I do not determine at an early date to farm the property myself personally, will be pleased to discuss with you a new contract for 1918. In line with my usual policy, I always try to trade first with parties on the property."

Appellee received the letter and consulted an attorney concerning his rights under the contract. Appellee testified that he then called upon appellant and insisted that he had a right to hold the plantation under the contract for the year 1918; that appellant said his purchase of the land terminated the lease on December 31, 1917, and that he must surrender the premises at that time or sign a new contract agreeing to pay $5,000 for the use of the plantation for the year 1918; that 75 acres of his cotton was still in the field, and, on that account, signed, under protest, the contract upon which this suit is

founded, asserting at the time that he intended to test his rights under the first contract. In keeping with appellee's position, he declined to pay the additional rent of $2,472 provided for in the second contract at the time it became due, paying only so much as he regarded due under the terms of the first contract.

Appellant asked for a peremptory instruction on the theory that the second contract was valid and a substitution for the first. The court refused to so instruct, and sent the case to the jury upon the theory that appellant's right to recover depended on whether or not appellee knew that Simonson did not own the land when he entered into the first contract. The instruction given by the court under the latter theory, over the specific objection of appellant, was as follows:

"There are two contracts in evidence here, one dated December 3, 1915, and one dated November 27, 1917. You are instructed that, if at the time plaintiff and defendant entered into contract dated December 3, 1915, plaintiff advised the defendant that he was acting for the owners of the land and not for himself, or if that fact was otherwise known to the defendant at the time, then you will find for the plaintiff on the issue of rent, for the amount here sued for, with interest thereon from November 15, 1918, to this time at the rate of 6 per cent.

"On the other hand, you are instructed that if you find, from a preponderance of the evidence, that at the time plaintiff and defendant entered into the contract dated December 3, 1915, plaintiff failed to disclose to the defendant the parties for whom he was acting, in so making said contract, and that defendant did not know that plaintiff was acting for others and believed that he was acting for himself in so making said contract, your verdict should be for the defendant on the issue of rent sued for."

The main insistence of appellee is that the contract of date November 27, 1917, required appellant to do that which he was bound to do under the contract of December 3, 1915, and therefore void for the want of consideration.

Appellant's insistence is that the contract of date November 27, 1917, was a settlement or compromise of a dispute concerning the effect, under the sales clause in the first contract, of the purchase of the lands by appellant from the owners, and that the settlement or compromise of the dispute was a sufficient consideration to support the latter contract.

Appellant's construction of the first contract was that the purchase of the lands terminated the lease on December 31, 1917, at which time he was entitled to the possession. They disputed concerning their respective rights. Appellant demanded a new contract specifying a rental of $5,000 for 1918, else the possession of his lands on December 31, 1917. Rather than move, or defend his possession under the terms of the first contract, he yielded to the demand of appellant by signing, under protest, the contract constituting the basis of this suit. The reasons assigned by appellee for signing the contract are that he had secured no other place and had not gathered his cotton, so it cannot be said he signed the new contract under duress, or that appellant's interpretation of his first contract was made in bad faith. Even if it be conceded that appellant's claim was without merit, the execution thereof was a settlement or compromise of a dispute between the parties, which compromise within itself was a sufficient consideration to support the rental contract or lease of date November 27, 1917. The contract of that date was substituted for the first and was a valid, binding obligation upon both appellee and appellant. It was said by Mr. Chief Justice HILL, in the case of *Satchfield* v. *Laconia Levee District*, 74 Ark. 270, that—

"The voluntary adjustment of a matter in dispute or litigation, even when protesting against it, effectually terminates the question of litigation."

This court is committed to the doctrine that a voluntary settlement or compromise of claims between parties, with or without merit, if asserted in good faith, is sufficient consideration to support a new agreement or

contract. *Gardner v. Ward,* 99 Ark. 588; *Cherokee Const. Co.* v. *Prairie Creek Coal Mining Co.,* 102 Ark. 428; *Kress* v. *Moscowitz,* 105 Ark. 638.

Other issues were presented by the pleadings and evidence and have been argued in the respective briefs of learned counsel, but, under our conclusion as to the vital issue in the case, it is unnecessary to incorporate in the opinion a statement of the pleadings or evidence upon which the collateral issues depended. Likewise, our determination of the vital issue renders a discussion of the collateral issues unnecessary.

In our view of the law, under appellee's own evidence and the undisputed fact that he owed $2,472 on November 15, 1917, the balance due on the last rental contract for 1918, the trial court should have instructed a verdict for appellant in that amount, with interest at the rate of 6 per cent. per annum from November 15, 1918, to the date of the rendition of the judgment.

For the error indicated, the judgment is therefore reversed and judgment is directed here for said sum, with interest at the rate of 6 per cent. per annum from said date until paid.

HART, J., (dissenting). After a careful consideration of the evidence we fail to find any consideration to support the contract. The rights and obligations of appellant were were not in any degree changed to his detriment. This is not a case of a compromise of claims; but is a case where a party by a new contract in which there is no change to his disadvantage, merely obligates himself to do that which he was already bound to do by the former contract.

The law is well settled that the mere agreement to perform an existing contract obligation by one party to a contract is not a valid consideration for a new promise for the other party. 9 Cyc. 349 and cases cited.

Judge WOOD concurs in this dissent.